THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NELIDA ACEVEDO, : | |
| : | Civil Action No. 09-4428 (PGS) |
| Plaintiff, : | |
| : | |
| v. : | OPINION |
| : | |
| COMMISSIONER OF SOCIAL SECURITY, : | |
| : | |
| Defendant. : | |

SHERIDAN, U.S.D.J.

      Plaintiff, Nelida Acevedo, appeals the denial of her application for a period of disability and disability insurance benefits by the Commissioner of Social Security (Commissioner). Plaintiff alleges disability beginning on June 26, 2006, due to arthritis, osteoporosis (back pain), cataracts, asthma, and problems with her kidneys. Plaintiff had an evidentiary hearing before the Hon. Donna A. Krappa, ALJ on September 28, 2008. At the hearing, Plaintiff and Pat Green, a vocational expert, testified. At the hearing, the ALJ agreed with the opinion of the vocational expert that Plaintiff was unable to return to her prior employment (teacher's assistant), but may continue to perform light work with some limitations, and therefore was not disabled. The only issue to be determined by the Court is whether substantial evidence supports the Commissioner's decision that Plaintiff was not disabled between Plaintiff's alleged onset date of June 26, 2006, and the date of the Administrative Law Judge's (ALJ) decision on November 20, 2008.

I.

Background

Plaintiff is a fifty year old woman who was born in Puerto Rico and moved to the United States when she was in her twenties (1970s). She is married and has two daughters. She obtained a college degree in Puerto Rico and can communicate in English. She has previous work experience as a full-time teacher's aide at the Academy Street School in Dover, New Jersey where she worked with a blind student. (R. 26, 54). She has a driver's license and regularly drives. (R. 28).

At the hearing, Plaintiff testified that she has had asthma for about thirty-five years and that she is unable to work due to asthma, which causes her to have difficulty breathing and wheezing. She uses nebulizer treatments on an "as needed" basis, mostly when the weather is humid or when she is exposed to chemicals. She also uses an Advair inhaler for her asthma symptoms. Chemicals, cold temperatures, and pollen sometimes cause her to have asthma attacks. (R. 48). Perfume and other scents irritate her lungs. (R. 49). Presently she can only walk a block before stopping to catch her breath. She has difficulty ascending stairs in her house, and she testified that she can only stand for ten to fifteen minutes at a time. (R. 37). Her weight is approximately 150 pounds.

Since 2002, Thomas A. Giangrasso, M.D. of Allergy, Asthma and Arthritis Associates, P.A. treated Plaintiff for symptoms of asthma. (R. 145-312). Over the course of the treatment, Plaintiff's pulmonary testing has shown a mild lung obstruction. (R. 240, 294, 295, 390). She was assessed with low vital lung capacity on three occasions prior to her alleged onset date, but has not been similarly assessed since June 26, 2006. (R. 241, 293, 294). On September 12, 2006, Plaintiff had a normal spirometry. (R. 292). According to the record, Plaintiff's last trip to the emergency room for asthmatic symptoms was in July 2005. She was given three nebulizer treatments and released. Dr.

Giangrasso noted that Plaintiff was functioning much better three days later. (R. 159, 207.)

Plaintiff also testified that she has had arthritis in her hands for about fifteen years causing pain and trembling in her hands and difficulty grasping objects without dropping them. (R. 33). She takes Tylenol for the pain in her hands.

Plaintiff also has osteoporosis or thinning bones which has caused a fractured foot (*see* x-ray and treatment of Robert C. Petrucelli, M.D.). (R. 330-34, 335-42). A bone density report of July 2, 2007 found that Plaintiff was "osteopenic" according to World Health Organization criteria. On May 13, 2008, x-rays of Plaintiff's right hand showed joint space narrowing at the distal interphalangeal joints two through five with deformities at the fourth and fifth joints. (R. 385). She also had joint space narrowing of the proximal interphalangeal joints three through five with a small ossific density noted adjacent to the second distal interphalangeal joint ulnar aspect. Plaintiff's left hand showed narrowing of the distal interphalangeal joints with a deformity at the third and advanced erosive change at the fifth. She also had narrowing of the proximal interphalangeal joints three through five with soft tissue calcification noted ulnar to the base of the fifth metacarpal. There are no opinions from Dr. Petrucelli that Plaintiff's osteoporosis cause any limitation on Plaintiff's ability to manipulate. (R. 385).

At the hearing, Plaintiff testified that her doctor indicated that the prednisone which had been prescribed to treat asthma for twenty or more years caused her osteoporosis and her cataracts. She is currently taking Fosamax for her symptoms of osteoporosis, and her cataract surgery was scheduled for sometime in 2009.

Socially, Plaintiff attends church on Saturday and travels annually to Puerto Rico with her family for a month. She described her typical day as waking and driving her daughter to school. (R.

43). She fixes the bed, straightens and hangs clothes, and cooks. Her daughter and her husband help her with housework. Plaintiff has reading problems due to cataracts, but she watches television in the evenings. (R. 31). She has no difficulty sleeping. Plaintiff stopped working as a teacher's aide because of difficulty with concentration (forgetfulness), problems with writing due to her hand shaking, and because she needs to avoid children when they are sick due to her asthma. Because of her forgetfulness, she often takes notes to remember things.

On November 15, 2006, a Physical Residual Functional Capacity Assessment by Burton Gillette, M.D., found that Plaintiff was limited to occasionally lifting and/or carrying twenty pounds; frequently lifting and/or carrying ten pounds; standing and/or walking (with normal breaks) for a total of about six hours in a eight hour work day; sitting (with normal breaks) for about six hours in a eight hour work day; unlimited pushing and/or pulling (including operation of hand and/or foot controls); and no postural, manipulative, visual, or communicative limitations were found. Plaintiff was found to have environmental limitations due to her asthma and must avoid extreme cold, noise, fumes, odors, dusts, gases, and poor ventilation.

On April 23, 2007, an additional Physical Residual Functional Capacity Assessment was done by Henry Schechter, M.D. who found the same limitations. Dr. Schechter additionally found Plaintiff's vision to be 20/25 and 20/20. He also stated that Plaintiff had side effects from her asthma medication, including wheezing and shakiness, with a forced vital capacity (FVC) of 85% of the predicted value, and an FEV1 of 64% of the predicted value, but that Plaintiff had never been intubated and had no recent visits to the emergency room. He further mentioned that a dual energy X-ray absorptiometry (DEXA) bond density scan showed osteoporosis in Plaintiff's lumbar spine and osteopenia in her hips bilaterally. (R. 324, 334). Dr. Schechter noted that there was no mention

4

of back pain, arthritis in the hands, difficulty walking due to leg pain, or sinus problems. Due to same, Dr. Schechter concluded that Plaintiff had no postural, manipulative, or visual limitations. (R. 324-25). According to his assessment, Plaintiff should avoid even moderate exposure to extreme cold and fumes, odors, dusts, gases, and poor ventilation. (R. 326). Dr. Schechter found that the symptoms of wheezing and shortness of breath, especially with exertion, were attributable to acute and chronic asthma, and that the severity is consistent with the evidence and her ability to function. (R. 327). He also noted that Plaintiff's cataracts and osteoporosis are unassociated with any functional impairment, and Plaintiff's hand tremors may be associated with the anti-asthmatic therapy she was taking. Dr. Schechter further noted that there was no objective evidence supporting functional limitations due to renal disease, sinus problems, hand or spinal arthritis, or leg problems. (R. 327).

Testimony of the Vocational Expert

At the hearing on September 29, 2008, the ALJ called vocational expert, Pat Green, to testify by telephone. (R. 20). The ALJ asked the expert to consider a hypothetical individual of similar age, education (high school), and past work experience (teacher's aide) to Plaintiff who was capable of light work permitting three fifteen minute breaks during the day. (R. 56). The individual could not use ladders, ropes or scaffolds, and only occasionally could use ramps and stairs. She could occasionally balance, stoop, kneel, crouch or crawl, and must not be exposed to undue amounts of dust, fumes, or known chemical irritants. As a result of limited concentration, the person would be limited to jobs that were simple and unskilled, having one or two steps, or repetitive jobs that only required an occasional change in the work setting during the workday (low-stress) and no more than occasional writing or the use of a computer. (R. 57). The expert testified that within those

parameters, such a person could perform the jobs of an assembler of small products – an unskilled, light job with an specific vocational preparation (SVP) of two with 5,000 jobs in the region and 312,884 jobs in the nation. (R. 58). The person could also perform the job of hand packager, of which there are 5,000 jobs in the region and 459,203 jobs in the national economy. If the person were restricted to sedentary work, the expert testified that she could perform three unskilled sedentary jobs with an SVP of two; they are sorter (2,000 jobs in the regional economy and 2,136 in the national economy); toy stuffer (2,500 jobs in the region and 300,000 in the national economy); and telephone quotation clerk (1,617 jobs in the region and 17,818 in the national economy). (R. 59).

      The ALJ asked the expert to consider a hypothetical person with problems with concentration up to 2.5 hours per day and/or who might miss up to two days a month due to illness. The vocational expert opined that there would be no jobs for a person with those limitations.[1]

      Based on the medical evidence of record, ALJ Donna A. Krappa determined that Plaintiff retained the residual functional capacity to perform light work that allowed Plaintiff (a) three breaks during the work day; (b) no climbing ladders, ropes, or scaffolds; (c) only occasional climbing of ramps or stairs; (d) no crawling; (e) no exposure to temperature extremes, wetness, or humidity; (f) no undue exposure to dust, fumes, or chemical respiratory irritants; (g) simple unskilled work of one or two steps; (h) low stress (only occasional change in the work setting or decision making during the work-day); and (i) no more than occasional writing or use of a computer. (R. 13). Because the Plaintiff's past relevant work as a teacher's aide was performed at more than her residual functional capacity, the ALJ determined that the Plaintiff could not perform her past relevant work. (R. 17).

---

[1] However, in his opinion the ALJ did not find Plaintiff's allegations of problems with concentration credible to the extent that she was limited in her ability to work.

Based on the vocational expert's testimony, the ALJ determined that Plaintiff was not disabled because she could perform other jobs which exist in significant numbers in the national economy. (R. 18-19).

II.

A claimant is considered disabled under the Social Security Act if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A plaintiff will not be considered disabled unless he cannot perform his previous work and is unable, in light of his age, education, and work experience, to engage in any other form of substantial gainful activity existing in the national economy. 42 U.S.C. § 423(d)(2)(A); *see Sykes v. Apfel*, 228 F.3d. 259, 262 (3d Cir. 2000); *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). The Act requires an individualized determination of each plaintiff's disability based on evidence adduced at a hearing. *Sykes*, 228 F.3d at 262 (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)); *see* 42 U.S.C. § 405(b). The Act also grants authority to the Social Security Administration to enact regulations implementing these provisions. *See Heckler*, 461 U.S. at 466; *Sykes*, 228 F. 3d at 262.

The Social Security Administration has developed a five-step sequential process for evaluating the legitimacy of a plaintiff's disability. 20 C.F.R. § 404.1520. First, the plaintiff must establish that he is not currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If the plaintiff is engaged in substantial gainful activity, the claim for disability benefits will be denied. *See Plummer*, 186 F.3d at 428 (citing *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987)). In step

two, he must establish that he suffers from a severe impairment. 20 C.F.R. § 404.1520(c). If plaintiff fails to demonstrate a severe impairment, disability must be denied.

If the plaintiff suffers a severe impairment, step three requires the ALJ to determine, based on the medical evidence, whether the impairment matches or is equivalent to a listed impairment found in "Listing of Impairments" located in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id.*; *Burnett*, 220 F.3d at 118-20. If it does, the plaintiff is automatically disabled. 20 C.F.R. §404.1520(d). But, the plaintiff will not be found disabled simply because he is unable to perform his previous work. In determining whether the plaintiff's impairments meet or equal any of the listed impairments, an ALJ must identify relevant listed impairments, discuss the evidence, and explain his reasoning. *Burnett*, 220 F.3d at 119-20. A conclusory statement of this step of the analysis is inadequate and is "beyond meaningful judicial review." *Id.* at 119.

If the plaintiff does not suffer from a listed severe impairment or an equivalent, the ALJ proceeds to steps four and five. *Plummer*, 186 F.3d at 428. In step four, the ALJ must consider whether the plaintiff "retains the residual functional capacity to perform [his or] her past relevant work." *Id.*; *see also Sykes*, 228 F.3d at 263; 20 C.F.R. § 404.1520(d). This step requires the ALJ to do three things: 1) assert specific findings of fact with regard to the plaintiff's residual functional capacity (RFC); 2) make findings with regard to the physical and mental demands of the plaintiff's past relevant work; and 3) compare the RFC to the past relevant work, and based on that comparison, determine whether the claimant is capable of performing the past relevant work. *Burnett*, 220 F.3d at 120.

If the plaintiff cannot perform the past work, the analysis proceeds to step five. In this final step, the burden of production shifts to the Commissioner to determine whether there is any other

work in the national economy that the plaintiff can perform. *See* 20 C.F.R. § 404.1520(g). If the Commissioner cannot satisfy this burden, the claimant shall receive social security benefits. *See Yuckert*, 482 U.S. at 146 n.5; *Burnett*, 220 F.3d at 118-19; *Plummer*, 186 F.3d at 429; *Doak v. Heckler,* 790 F.2d 26, 28 (3d Cir. 1986). In demonstrating there is existing employment in the national economy that the plaintiff can perform, the ALJ can utilize the medical-vocational guidelines (the "grids") from Appendix 2 of the regulations, which consider age, physical ability, education, and work experience. 20 C.F.R. § 404, subpt. P, app. 2. However, when determining the availability of jobs for plaintiffs with exertional and non-exertional impairments, "the government cannot satisfy its burden under the Act by reference to the grids alone," because the grids only identify "unskilled jobs in the national economy for claimants with exertional impairments who fit the criteria of the rule at the various functional levels." *Sykes*, 228 F.3d at 269-70. Instead, the Commissioner must utilize testimony of a "vocational expert or other similar evidence, such as a learned treatise," to establish whether the plaintiff's non-exertional limitations diminish his residual functional capacity and ability to perform any job in the nation. *Id.* at 270-71, 273-74; *see also Burnett,* 220 F.3d at 126 ("A step five analysis can be quite fact specific, involving more than simply applying the Grids, including… testimony of a vocational expert.") If this evidence establishes that there is work that the plaintiff can perform, then he is not disabled. 20 C.F.R. § 404.1520(g).

### III.

Review of the Commissioner's final decision is limited to determining whether the findings and decision are supported by substantial evidence in the record. 42 U.S.C. § 405(g). *See Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Doak, 790 F.2d 26 at 28. Substantial evidence has been defined as "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.*"  Hartranft,* 181 F.3d at 360 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla.  *Richardson*, 402 U.S. at 401; *Morales*, 225 F.3d at 316; *Plummer*, 186 F.3d at 422.  Likewise, the ALJ's decision is not supported by substantial evidence where there is "competent evidence" to support the alternative and the ALJ does not "explicitly explain all the evidence" or "adequately explain his reasons for rejecting or discrediting competent evidence." *Sykes*, 228 F.3d at 266 n.9.

The reviewing court must view the evidence in its totality.  *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984).

> A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) - - or if it really constitutes not evidence but mere conclusion.

*Morales*, 225 F.3d at 316 (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983)); *see also Benton v. Bowen*, 820 F.2d 85, 88 (3d Cir. 1987).  Nevertheless, the district court's review is deferential to the ALJ's factual determinations.  *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (en banc) (stating district court is not "empowered to weigh the evidence or substitute its conclusions for those of the factfinder").  A reviewing court will not set a Commissioner's decision aside even if it "would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360. But despite the deference due the Commissioner, "appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not

supported by substantial evidence." *Morales*, 225 F.3d at 316 (quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)).

Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. requires that the claimant provide objective medical evidence to substantiate and prove his or her claim of disability. *See* 20 CFR § 404.1529. Therefore, claimant must prove that his or her impairment is medically determinable and cannot be deemed disabled merely by subjective complaints such as pain. A claimant's symptoms "such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect . . . .[one's] ability to do basic work activities unless 'medical signs' or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. §404.1529(b); *Hartranft* , 181 F.3d at 362. In *Hartranft*, claimant's argument that the ALJ failed to consider his subjective findings were rejected where the ALJ made findings that claimant's claims of pain and other subjective symptoms were not consistent with the objective medical records found in the record or the claimant's own hearing testimony.

IV.

Plaintiff argues that the ALJ found that Plaintiff only suffers with asthma, but in actuality she has three "pulmonary impairments . . . including chronic obstructive pulmonary disease (COPD) and chronic restrictive ventilatory disease." By only recognizing asthma, Plaintiff concludes that this "allow[ed] the ALJ to later minimize the entirety of Plaintiff's severe pulmonary condition." Despite this assertion, Plaintiff does not reference a treating physician who made such a broad diagnosis. In fact, Plaintiff has not been assessed with low vital capacity since June 26, 2006; and in September 2006, Plaintiff had a normal spirometry. Moreover, in her opinion, the ALJ found that the other

alleged pulmonary conditions did not satisfy the criteria as set forth in the regulatory requirement.

ALJ Krappa wrote:

> (Asthma) has not been met because the prescribed treatment has prevented "attacks" requiring intensive treatment such as intravenous medication or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting from occurring, and because the criteria of section 3.02A (<u>chronic obstructive pulmonary disease</u>) are not satisfied. At the claimant's height of 5 feet 3 inches, Section 3.02 would require an FEVI equal to or less than 1.115L on spirometric pulmonary function testing. Yet, on every one of multiple studies since January 2006 the FEVI has been at least 1.55L before bronchodilator administration and at least 1.8L when bronchodilators have been administered. A study on September 12, 2006 actually was normal. On January 24, 2008, July 25, 2008 and September 9, 2008 the FEVI reached 70-80% of the predicted value – without bronchodilator administration. Although some of the studies also suggested pulmonary restriction, the FVC would need to be equal to or lower than 1.35L in order for section 3.02B (<u>chronic restrictive ventilatory disease</u>) to be satisfied; furthermore, all of the FVCs have been above 2.2L, even without bronchodilator administration (Exhibit 2F at pages 96-7 and 148-9 and Exhibit 8F at pages 42 and 46-9).
>
> The claimant's additional impairments have not even been "severe" let alone of listing level severity – for the requisite length of time. (emphasis added).

The Plaintiff's argument about three rather than one pulmonary ailment fails. The ALJ found sufficient substantial evidence for her determination.

V.

Plaintiff's second argument is that the ALJ failed to "combine and compare" all of the Plaintiff's impairments. The regulation that requires the ALJ to combine and compare impairments states in part:

> (3) If you have a combination of impairments, no one of which meets a listing (see §404.1525(c)(3)), we will compare your findings with those for closely analogous listed impairments. If the findings related

12

> to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.

Despite the combine and compare requirement, it may not be sufficient to equal a listed impairment. Although there is a requirement to combine and compare, "the mere accumulation of a number of impairments will not establish medical equivalency." (Program Operations Manual). A fair reading of the ALJ's decision indicates that she combined Plaintiff's impairments carefully and compared them to determine whether the Plaintiff's impairments were medically equivalent to a listed impairment. Within the ALJ's opinion, there are at least three references to the combine and compare requirement. First, the ALJ noted that Plaintiff "claims disability . . . based primarily upon arthritis, osteoporosis and asthma," wherein the ALJ noted that a combination of impairments could cause disability. (R. 9). Further, the ALJ wrote "disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments . . ." (R. 10). Second, in considering the impairments, the ALJ found Plaintiff "has the following severe impairments: arthritis, osteoporosis and asthma." (R. 12). And finally, in analyzing the impairments, the ALJ discussed each at length, describing the medical evidence and the Plaintiff's symptoms. (R. 12-17). The ALJ found the combined impairments did not render her disabled. In sum, the ALJ stated "considering all of the claimant's impairments <u>combined</u>, the above residual functional capacity is supported by a totality of the evidence." (R. 17). In light of the above, the ALJ combined and carefully compared the impairments to determine whether Plaintiff met any listed impairment. Accordingly, the Plaintiff's argument lacks merit.

VI.

Plaintiff's final argument is that the "residual functional capacity (RFC) assessment and the ALJ's hypothetical question to the vocational expert based on the assessment are not supported by substantial evidence." The crux of the argument is that the ALJ did not "recite all probative evidence," and her conclusions were not "comprehensive and analytic" with regard to the residual functional capacity (RFC) of Plaintiff. Generally, the RFC analysis "must be accompanied by a clear and satisfactory explanation of the basis on which it rests." *Fargnoli v. Massanari*, 247 F. 3d 34, 41 (3d Cir. 2001). In this case, there is a satisfactory explanation.

First, the ALJ relied upon two RFC assessments by doctors Gillette and Schechter. Both opined that Plaintiff could perform light work. They both found the Plaintiff could lift and carry at least ten pounds. Both doctors considered her arthritis, asthma, and osteoporosis in reaching their determination. These reports are substantial evidence.

Second, the ALJ found that the Plaintiff's "routine activities suggest ability to perform all components of the established functional capability." The ALJ determined:

> In any event, the claimant's routine activities suggest ability to perform all components of the established functional capability in spite of all her impairments and treatment side effects. The claimant, according to her testimony, is married. She lives with her husband and two grown children. Her husband is retired: he worked for AT&T/Lucent Technologies. Her mother is alive and lives in Puerto Rico. Despite her alleged difficulties, she has a driver's license, drives locally and in an emergency. She drove to the hearing. She gets up each morning and drives her sixteen years old daughter to school. The school is approximately 7 minutes away from her home. She returns home, eats, and takes her medicine. She manages to shower. She cooks one meal a day – supper, resting as necessary, although she sometimes is unable to finish. She tries to straighten up and organize the home. She will sweep the floor, although she sometimes becomes dizzy. She does watch television. For fun she goes to her sister's

>house and also to the movies on occasion with her sister-in-law. She really does not use the computer currently because of the eye problem. She attends Sunday church services. She visits Puerto Rico occasionally (now about once a year) and she stays there for three weeks to a month.

Third, in Plaintiff's brief, it suggests Plaintiff constantly shakes. The ALJ discounted this symptom because there is no documented medically determinable impairment that could reasonably be expected to directly cause shaking. At an examination in December 2006, a complaint of shaking was attributed to steroid use. Even So, the treatment records do not reflect persistent shaking.

Fourth, the ALJ found Plaintiff was not credible about "the intensity, persistence and limiting effects of the symptoms" displayed due to the satisfactory RFC results. In short, it is clear that the ALJ's decision regarding the RFC was based on substantial evidence.

## VII.

Based on a review of the entire record, the ALJ's decision was based on substantial evidence. The decision of the Commissioner of Social Security is affirmed. The Complaint is dismissed.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

September 27, 2010

15